FILED

2022 Sep-14 PM 02:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| TERESA CHAPMAN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.   4:20-cv-01959-HNJ |
| | ) | |
| SOCIAL SECURITYADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

Plaintiff Teresa Chapman seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding her claim for supplemental security income benefits. The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment. (Doc. 12).

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920(a)(4). The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at § 416.920(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the listed impairments. *Id.* at § 416.920(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would prevent any person from performing substantial gainful activity. 20

2

C.F.R. §§ 416.920(a)(4)(iii), 416.925.  That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment.  *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. §§ 404.1520, 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work.  20 C.F.R. § 416.920(e).  At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work.  *See id.* § 416.920(a)(4)(iv).  If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled.  *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work.  20 C.F.R. §§ 416.912(b)(3), 416.920(g).  If the claimant can perform other work, the evaluator will not find the claimant disabled.  *See id.* § 416.920(a)(4)(v); *see also* 20 C.F.R.

§ 416.920(g).   If the claimant cannot perform other work, the evaluator will find the claimant disabled.   20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'"   *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).   Indeed, "an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'"   *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citing 42 U.S.C. § 405(g).   Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ.   "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." . . .   "Substantial evidence . . . . is 'more than a mere scintilla,' . . . [and] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Biestek*, 139 S. Ct. at 1154 (citations omitted). Therefore, substantial evidence exists even

if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Chapman, age 52 at the time of the ALJ hearing, protectively filed an application for supplemental security income benefits on June 19, 2019, alleging disability as of May 1, 2013. (Tr. 30, 165). The Commissioner denied Chapman's claims, and Chapman timely filed a request for an administrative hearing. (Tr. 73-78, 82-84). The Administrative Law Judge ("ALJ") held a hearing on May 18, 2020 (Tr. 28-53), and issued a decision on June 9, 2020, finding Chapman not disabled. (Tr. 8-22).

Applying the five-step sequential process, the ALJ found at step one that Chapman did not engage in substantial gainful activity after May 22, 2019, the application date. (Tr. 13). At step two, the ALJ found Chapman had the severe impairments of ischemic heart disease with mild pulmonary edema, degenerative disc disease of the lumbar spine, hypertension, obesity, and asthma. (*Id.*). At step three, the ALJ found that Chapman's impairments, or combination of impairments, did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15).

Next, the ALJ found that Chapman exhibited the residual functional capacity ("RFC")

5

to perform light work as defined in 20 CFR 416.967(b) except that the claimant can lift and carry 20 pounds occasionally and 10 frequently. She can frequently . . . stand and/or walk with normal breaks for six hours in an eight-hour workday, [and] sit with normal breaks for six hours in an eight-hour workday. Her pushing and pulling capabilities are the same as her lifting and carrying capabilities. She can frequently climb ramps and stairs, but never climb . . . ladders, ropes, and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to extreme cold and extreme heat. She must avoid all exposure to hazards such as unprotected heights and hazardous, unguarded, moving machinery.

(Tr. 17).

At step four, the ALJ determined Chapman had no past relevant work. She previously performed work as a cleaner "off the record or under the table, but as her earnings are not in the record, it is unknown whether this work provided sufficient earnings to constitute past relevant work." (Tr. 21). At step five, the ALJ determined Chapman could perform a significant number of jobs in the national economy considering her age, education, work experience, and RFC. (*Id.*). Thus, the ALJ determined that Chapman did not suffer a disability, as defined by the Social Security Act, since May 22, 2019. (Tr. 22).

Chapman timely requested review of the ALJ's decision. (Tr. 161-64). On November 2, 2020, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 1-3). On December 9, 2020, Chapman filed her complaint with the court seeking review of the ALJ's decision. (Doc. 1).

6

## ANALYSIS

In this appeal, Chapman argues the ALJ's residual functional capacity finding lacks substantial evidentiary support; the Appeals Council wrongly denied review after receiving new evidence supporting her disability; the ALJ wrongly rejected the consultative examiners' opinions; and the ALJ's hypothetical question to the vocational expert did not include all of her limitations.  For the reasons discussed below, the undersigned concludes those contentions do not warrant reversal.

I.   **Substantial Evidence Supports the ALJ's Finding that Chapman Possessed the Residual Functional Capacity to Perform a Limited Range of Light Work, and the ALJ Properly Included All Supported Limitations in the Hypothetical Question to the Vocational Expert**

As previously discussed, at step four of the sequential analysis the ALJ formulates a claimant's RFC by assessing his or her "ability to meet the physical, mental, sensory, and other requirements of work."  20 C.F.R. § 416.945(a)(4).  The claimant's RFC represents "the most [he or she] can still do despite [their] limitations."  20 C.F.R. § 416.945(a)(1).  Assessing a claimant's RFC lies within the exclusive province of the ALJ.  *See* 20 C.F.R. § 416.927(d)(2) ("[T]he final responsibility for deciding [a claimant's RFC] is reserved to the Commissioner."); 20 C.F.R. § 416.946(c) ("[T]he administrative law judge . . . is responsible for assessing [a claimant's] residual functional capacity."); *Oates v. Berryhill*, No. 17-0130-MU, 2018 WL 1579475, at *8 (S.D. Ala. Mar. 30, 2018) ("The responsibility for making the residual functional capacity determination rests with

7

the ALJ."); *Del Rio v. Berryhill*, No. 3:16-CV-00489-RFC, 2017 WL 2656273, at *8 (W.D. Tex. June 20, 2017) ("The ALJ has the sole responsibility of determining Plaintiff's RFC . . . .").

Chapman argues the ALJ improperly found she possessed the residual functional capacity to perform a limited range of light work.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b). Chapman argues that the ALJ should have found her capable of performing, at most, sedentary work, which would qualify her as disabled pursuant to Grid Rule 201.12 of the Medical-Vocational Guidelines.

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

Chapman asserts she suffers a "very weakened condition due to ischemic heart disease with mild pulmonary edema, degenerative disc disease of the lumbar spine,

hypertension, obesity, and asthma." (Doc. 13, at 15). She contends that "[w]hile the ALJ summarized the medical evidence, the RFC assessment is simply conclusory and does not contain any rationale or reference to the supporting evidence, as required by SSR 96-8p." (*Id.* at 16). She also asserts the ALJ "omitted any limitations caused by severe pain." (*Id.*).

Social Security Ruling 96-8p dictates that an RFC assessment must first determine the claimant's functional limitations and then address the claimant's ability to work on a function-by-function basis, pursuant to the functions described in paragraphs (b), (c), and (d) of 20 C.F.R. § 416.945. SSR 96-8p, 1996 WL 374184, *1. The ALJ does not need to enumerate every piece of evidence or function used in her determination, but rather must simply portray that she considered the claimant's medical conditions in totality. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *see also Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009). Once the ALJ has conducted that determination, the ALJ may then express the RFC in terms of exertional levels such as sedentary, light, medium, heavy, and very heavy. SSR 96-8p, 1996 WL 374184, at *1; *see Castel*, 355 F. App'x at 263; *Freeman v. Barnhart*, 220 F. App'x 957, 959-60 (11th Cir. 2007); *see also Bailey v. Astrue*, No. 5:11-CV-3583-LSC, 2013 WL 531075, *6 (N.D. Ala. Feb.11, 2013).

The ALJ's analysis in this case satisfied the requirements of SSR 96-8p, and substantial evidence supports the ALJ's RFC formulation. Chapman did not

accurately describe the ALJ's RFC finding as conclusory, devoid of rationale and supporting evidence, and omitting any limitations resulting from pain. To the contrary, the ALJ thoroughly described Chapman's medical records and thoroughly explained how Chapman's physical conditions affected her ability to work.

The ALJ noted that Chapman displayed only mild symptoms after undergoing a successful left percutaneous coronary intervention with balloon pump placement in May of 2018. Though Chapman continued to complain of occasional chest pain, clinical testing and examinations produced mostly normal results. Regarding Chapman's back pain, the ALJ described clinical examinations producing normal results and imaging results portraying some degenerative changes but no disc space impingement, bulging, herniation, or stenosis. The ALJ also determined Chapman's obesity, combined with her degenerative disc disease, contributed to her limitations, and she accounted for those limitations by imposing restrictions on bending, stooping, kneeling, crouching, and crawling. (Tr. 19-20). Substantial evidence in the record supports those conclusions.

Chapman asserts the ALJ found she only had minor physical limitations, but that assertion does not accurately portray the ALJ's decision. The ALJ found Chapman suffered multiple severe impairments, and she assessed significant functional limitations.

Chapman also asserts the ALJ's RFC finding lacks substantial support because the ALJ did not rely upon a formal functional assessment by a treating or examining physician.   However, relevant authority clearly establishes that the responsibility for conducting an RFC analysis rests with the ALJ, not with any medical provider.   *See* 20 C.F.R. § 416.927(d) (stating that RFC and disability determinations constitute "issues reserved to the Commissioner"); *Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 486 (11th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(d)) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive.").

Finally, Chapman argues the ALJ based her RFC finding on a hypothetical question to the vocational expert that did not include all of her limitations.   "'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'" *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam)).   However, "'the ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported.'"   *Id.* (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

The ALJ's hypothetical question to the vocational expert mirrored her residual functional capacity finding.  (Tr. 17, 50-51).  Chapman does not specify any other

11

limitations the ALJ should have added to the hypothetical question, and as discussed, the ALJ did not have to include limitations she deemed unsupported. The court cannot discern from the record any limitations the ALJ could have included that would change the disability finding, other than those limitations she properly considered unsupported. Accordingly, the court concludes the ALJ included all of Chapman's impairments in the hypothetical question to the vocational expert, and she properly relied on the vocational expert's testimony.

Therefore, the court finds the ALJ properly assessed Chapman's residual functional capacity, and substantial evidence supports the ALJ's decision. The ALJ did not err.

## II. The Appeals Council Properly Considered the New Evidence Chapman Submitted

Generally, a claimant may present new evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. §404.900(b)). The Appeals Council will review a case if it receives additional "evidence that is new, material, and relates to the period on or before the date of the [ALJ] hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5).

After the ALJ's decision, Chapman submitted to the Appeals Council an August

27, 2020, Physical Capacities Form from Physician's Assistant Teresa Price at St. Michael's Clinic.   Price indicated Chapman could sit upright for less than 15 minutes at a time and stand for less than 15 minutes at a time.   She would need to lie down, sleep, or sit with her legs propped up to four hours out of an eight-hour day.   She would remain off-task 50 percent of an eight-hour workday, in addition to regular breaks.   She would miss eight days of work in a thirty-day period due to her symptoms. She could occasionally lift up to ten pounds, but she could never lift more than ten pounds.   Price stated Chapman's peripheral neuropathy, radiculopathy, and incontinence caused her functional limitations, and her medications would additionally cause slowed heart rate and low blood pressure.   Price checked a box stating Chapman's symptoms dated back to May 22, 2019, the date Chapman applied for benefits.   Price did not respond to the question whether Chapman's condition would last 12 or more months.   (Tr. 7).

The Appeals Council applied the following standard when assessing Chapman's new evidence:

> We receive additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision.   You must also show there is a reasonable probability that the additional evidence would change the outcome of the decision.   You must show good cause for why you missed informing us about or submitting it earlier.

(Tr. 1-2).   The Appeals Council did not consider Price's statement because Price dated it more than two months after the ALJ's June 9, 2020, decision.   Thus, according to the Appeals Council, Price's statement "does not relate to the period at issue."   (Tr. 2).

Chapman first argues the Appeals Council applied the incorrect legal standard when it assessed whether a reasonable *probability* existed that the new evidence would change the outcome of the administrative decision, as it should have assessed whether a reasonable *possibility* existed of changing the outcome.   (Doc. 13, at 21).   That argument lacks merit.   Effective January 17, 2017, the Commissioner revised 20 C.F.R. § 416.1470(a)(5) to include the above-stated requirement that new evidence must demonstrate a "reasonable probability" of changing the outcome of the ALJ's decision, with compliance required as of May 1, 2017.   *See* 81 FR 90987-01, 2016 WL 7242991 (Dec. 16, 2016).   Thus, the Appeals Council correctly applied the language of the regulation in effect on the date of Chapman's appeal.

Next, Chapman's brief summarizes her records from St. Michael's Clinic, and then states, "Dr. Price was certainly aware of claimant's heart and back conditions when she prepared the physical capacity evaluation."   (Doc. 13, at 20).   As an initial matter, as the Commissioner points out, Price is a Physician's Assistant, not a doctor. Moreover, Chapman's argument does not demonstrate Price's evaluation related to the period before the ALJ's decision, or that it would reasonably change the outcome of the decision.

14

Though Price checked a box indicating Chapman's limitations dated back to May 22, 2019, the Eleventh Circuit has persuasively found in multiple unpublished decisions that such an action does not necessarily indicate a medical provider based her assessment on evidence from the relevant period.   *See Griffin v. Soc. Sec. Admin., Comm'r*, 842 F. App'x 339, 342 (11th Cir. 2021) ("Dr. Feist's mental health statement did not cite to any medical evidence to support his conclusions that the limitations existed beginning in July 2012.   He merely indicated the limitations via the questionnaire and did not provide any reference to Griffin's medical records from the relevant time period to support his conclusion that the limitations did apply during the relevant time period."); *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 693 (11th Cir. 2020) (citing *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1310 (11th Cir. 2018)) ("In the 2017 assessment, Dr. Alterman checked a box indicating that McCullars's limitations dated back to her alleged onset date of November 11, 2011, but the records do not indicate that Dr. Alterman reviewed McCullars's medical history during the relevant time period.   Therefore, the Appeals Council properly determined that these records were not chronologically relevant."); *Lindsey v. Comm'r of Soc. Sec.*, 741 F. App'x 705, 712 (11th Cir. 2018) (citing *Hargress*, 883 F.3d at 1310; *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1319, 1322 (11th Cir. 2015)) ("[I]t is not clear that Dr. Pappas's opinion is chronologically relevant because he never indicated that he reviewed or relied on Lindsey's prior medical records in forming his opinion, other than stating Lindsey's

15

conditions had lasted 10 to 12 years."). Even if the assessor treated the claimant during the time period before the ALJ's decision, the assessment does not relate to the relevant time period if the assessor does not cite to evidence from that time period. *See Howze v. Soc. Sec. Admin.*, No. 21-11066, 2022 WL 152236, at *3 (11th Cir. Jan. 18, 2022) (identity of assessor as treating physician did not render the assessment chronologically relevant when the assessor did not indicate she evaluated the claimant's past medical records when forming her opinion).

Because Price did not discuss any of Chapman's medical records from the relevant time period when she rendered the August 27, 2020, assessment, that assessment does not chronologically relate to the time period prior to the ALJ's decision. Moreover, a review of Chapman's St. Michael's Clinic records does not indicate that considering those records would have made a difference.

On October 3, 2018, Chapman complained of gallstones, but that presents an acute condition, not a long-term disabling impairment. (Tr. 322-24, 516-18, 659-61). During subsequent visits on December 27, 2018, March 7, 2019, March 15, 2019, May 3, 2019, May 17, 2019, May 22, 2019, September 6, 2019, and March 4, 2020, she either complained of routine problems like skin tags and warts, or she requested medication refills. (Tr. 491-93, 498-515, 635-41, 645-58). On one occasion, July 24, 2019, she complained of lower back pain that caused numbness in her legs and incontinence. (Tr. 495-97, 642-44). That complaint presents more serious symptoms, but an isolated

16

complaint does not reflect a long-term disabling condition, and the St. Michael's records do not contain any other evidence of such a condition.

Chapman also argues the ALJ erred by failing to give Price's statement controlling weight as the opinion of a treating medical provider, but the rule requiring the Commissioner to give special weight to treating providers' opinions no longer applies.   On January 18, 2017, the Commissioner revised the regulations governing the assessment of medical opinion evidence for claims filed on or after March 27, 2017.   *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867 (Jan. 18, 2017) (codified at 20 C.F.R. § 416.920c).   Chapman's claims, filed on June 19, 2019, fall under the revised regulations.

Pursuant to the revised regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."   20 C.F.R. § 416.920c(a).   Rather, the ALJ must apply the same factors in the consideration of all medical opinions and administrative medical findings, rather than affording specific evidentiary weight to any particular provider's opinion.   *Id.*

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those factors.   20 C.F.R. § 416.920c(b)(2).   Thus, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical

opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources[,] the more persuasive the medical opinions or prior administrative medical finding(s) will be."   20 C.F.R. § 416.920c(c)(1)-(2).

The ALJ also may consider the medical source's specialty and the relationship between the claimant and the medical source, including the length, purpose, and extent of the treatment relationship, and the frequency of examinations.   20 C.F.R. § 416.920c(c)(3)-(5).   The ALJ "may" conclude that an examining medical source will understand the claimant's impairments better than a medical source who only reviews evidence in the claimant's file.   20 C.F.R. § 416.920c(c)(3)(v).   The ALJ also "will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including, but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."   20 C.F.R. § 416.920c(c)(5).

Chapman argues that despite the regulatory revisions, the court still must follow Eleventh Circuit case law requiring deference to a treating physician's opinion, absent a showing of good cause to the contrary.   (Doc. 13, at 21-24; Doc. 15, at 5-6).   *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d

18

1436, 1440 (11ᵗʰ Cir. 1997)).   However, the Eleventh Circuit explicitly rejected that argument in *Harner v. Soc. Sec. Admin., Comm'r*, 38 F4th 892, 898 (11ᵗʰ Cir. 2022). Therefore, the undersigned will apply the revised regulatory requirements, not the treating physician rule, when assessing the ALJ's consideration of the medical opinions in the record.   Pursuant to the revised regulations, the ALJ did not need to give Price's statement controlling weight.

In summary, the Appeals Council did not err in its consideration of the new evidence from Price.

## III.   The ALJ Properly Considered the Consultative Medical Opinions

Chapman also argues the ALJ improperly considered the opinions of consultative examiners Dr. Anthony Fava and CRNP Ashley Wagner.[2]   For the reasons discussed, the court disagrees and finds that the ALJ properly considered Dr. Fava's and Ms. Wagner's opinions.

As previously discussed, the revised regulations apply to the consideration of all medical opinion evidence.   Therefore, the court will primarily consider the supportability and consistency of the consultative opinions, 20 C.F.R. § 416.920c(b)(2), but it will also consider other factors such as the examiners' specialties, the nature and

---

[2]  The record also includes consultative psychological examination reports from Robert G. Summerlin, Ph.D. (Tr. 297-99), and Scott A. Duncan, Psy.D. (Tr. 364-67).   But Chapman did not challenge the ALJ's consideration of those reports.

extent of the examination, and the examiners' familiarity with regulatory requirements. 20 C.F.R. §§ 416.920c(c)(3)-(5).

Chapman argues the court should apply a higher standard to review the ALJ's decision to reject the opinion of a consulting medical professional the Social Security Administration hired.  However, as Chapman bases her contention upon a Seventh Circuit case, *Wilder v. Chater*, 64 F.3d 335 (7ᵗʰ Cir. 1995), that the Eleventh Circuit has repeatedly declined to follow, s*ee, e.g., Hand v. Social Security Administration,* 786 F. App'x 220, 226 (11ᵗʰ Cir. 2020); *Jackson v. Social Security Administration, Comm'r,* 779 F. App'x 681, 685 (11ᵗʰ Cir. 2019); *Arnold v. Social Security Administration,* 724 F. App'x 772, 779 n.3 (11ᵗʰ Cir. 2018), the court rejects that argument.

Dr. Anthony Fava performed a consultative examination on October 3, 2017. Chapman reported a history of atrial fibrillation, chronic back pain, depression, and anxiety, but when Dr. Fava asked Chapman why she could not work, "she stated she is able to work and not disabled," and she had applied for disability benefits on her cardiologist's suggestion.  (Tr. 291).  Chapman reported experiencing approximately three to four blackouts each month, but she denied her atrial fibrillation and back pain interfered with her ability to work.  Her back pain normally presented at a level nine of ten, but she treated it with over-the counter medications.  (*Id.*).

During the clinical examination, Chapman displayed appropriate behavior and appearance, and she did not use an assistive device to ambulate.  She experienced

20

expiratory wheezes, but her heart displayed normal sinus rhythm with no murmur or gallop.   She displayed normal range of motion in her neck, back, and upper and lower extremities.   She could sit on and arise from the examination table without difficulty, and she did not display ataxia or spasticity.   She could squat, arise, and heel-to-toe walk. She displayed 3/4 reflexes, but she exhibited full muscle strength, normal sensation, normal grip, negative straight leg raising test, no atrophy, and intact fine and gross manipulation.   (Tr. 292).   Dr. Fava assessed Chapman as experiencing atrial fibrillation, controlled on Metoprolol; chronic low back pain; and chronic depression and anxiety.   He stated:   "This claimant is able to perform the following work-related activities:   sitting, standing, and walking, lifting, carrying, and handling objects weighing less than 5 pounds.   Hearing and speaking.   She is unable to travel."  (Tr. 293).

The ALJ did not find Dr. Fava's opinion persuasive.   In particular, Dr. Fava's finding that Chapman could lift, carry, and handle objects weighing less than five pounds was "inconsistent with the findings of [Dr. Fava's] own examination, where the claimant displayed a full range of motion, normal muscle strength and grip, and normal sensation to pin prick and vibration . . . ."  (Tr. 20).   The ALJ also considered Dr. Fava's restriction on Chapman's ability to travel "inconsistent with the claimant's reports about being able to drive by herself."   (*Id.*).

The ALJ properly applied the revised regulations by assessing the consistency of Dr. Fava's findings with other evidence in the record, and by considering whether Dr.

21

Fava's examination findings supported the doctor's conclusions about Chapman's limitations.   *See* 20 C.F.R. § 416.920c(b)(2).   Chapman's arguments that the ALJ failed to show good cause for rejecting Dr. Fava's opinion and failed to state with "some measure of clarity" her reasons for the decision follow case law under the previous regulations, which required affording deference to treating physicians, and to examining physicians under certain circumstances.   In any event, as set forth in the previous paragraph, the ALJ clearly stated her reasons for rejecting Dr. Fava's opinion.

Certified Registered Nurse Practitioner Ashley Wagner examined Chapman on August 24, 2019.   Chapman reported increased shortness of breath, fatigue, and worsening back pain.   She also reported a history of myocardial infarction and cardiac stent placement in 2008.   She denied acute symptoms on the examination date, but she reported experiencing frequent chest pain, shortness of breath, and dizziness.   She reported difficulty sitting more than 30 minutes, standing more than ten minutes, and walking more than 300 feet.   (Tr. 369).

During the clinical examination, Chapman demonstrated wheezing, diminished lower breath sounds, paraspinal muscle tenderness in the thoracic and lumbar spine, positive straight leg raising test, moderate difficulty sitting on and arising from the examination table, great difficulty walking on heels and toes, and great difficulty squatting and arising.   Otherwise, the examination produced normal cardiovascular function, full muscle strength, normal grip and dexterity, normal sensory function and

reflexes, normal gait and station, and normal range of motion in the spine and all joints. (Tr. 370-73).   Wagner recommended a referral to a neurosurgeon to assess nerve root impingement, an EKG due to dizziness and syncopal episodes during heat, a cardiology evaluation, and a pulmonary function test to rule out COPD.   She stated Chapman "is unable to complete work related activities due to worsening chronic conditions."   (Tr. 374).

The ALJ determined Wagner's opinion "is not entitled to any consideration because her finding that the claimant is unable to complete work-related activities is a finding on the ultimate issue of disability, which is an issue reserved to the Social Security Administration Commissioner . . . ."   (Tr. 20).

The ALJ rightfully refuted Wagner's statements about Chapman's ability to work. As the Eleventh Circuit recently reiterated:

> An administrative law judge is not required to agree with the statement of a medical source that a claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1).   Whether a claimant meets the statutory definition of disability is an administrative finding, not a medical opinion.   That administrative finding is "reserved to the Commissioner." *Id.* § 404.1527(d).   And because the Commissioner has delegated his authority to make the finding at the hearing level to an administrative law judge, the finding is effectively reserved to the administrative law judge. *See id.* § 404.1546(c).   A medical source's opinion that a claimant is "disabled" or "unable to work" is not dispositive of a disability claim because the determination is reserved to administrative law judge acting on behalf of the Commissioner. *Id.* § 404.1527(d)(1).

23

*Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1338-39 (11th Cir. 2021).   Moreover, Wagner's statement does not find support in her own examination notes.   Though Wagner detected some wheezing and diminished lower breath sounds, Chapman displayed normal cardiovascular function.   Though Wagner detected some motor deficiencies, the examination revealed normal muscle strength, grip, dexterity, sensory function, reflexes, gait, station, and range of motion.

In summary, the ALJ properly considered the consultative examiners' opinions, and substantial evidence supported the ALJ's decision.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision. The court will enter a separate final judgment.

**DONE** this 14th day of September, 2022.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE